BRULARD *v.* THE ALVIN.

DELERY *v.* SAME.

*(Circuit Court, E. D. Louisiana. March 31, 1891.)*

1. CARRIERS OF PASSENGERS—TICKET—BREACH OF CONTRACT.
    Defendant railroad company also owned a line of steam-boats running in the Mississippi river, and sold tickets good between stations and landings either on the railroad or steam-boats, and entitling passengers to be carried either to the station named or to the one nearest on the opposite bank. Having sold plaintiff such a ticket, defendant, in retaliation for his refusal to give the boat line his entire freight, refused to land him at the landing opposite the station named in the ticket,

saying that they had abandoned the landing. *Held*, a breach of the contract embodied in the ticket, for which plaintiff was entitled to at least nominal damages.

2. SAME—DAMAGES.

The actual damages being purely nominal, a recovery of $60 was proper.

In Admiralty.

*Wm. Grant* and *J. P. Hornor*, for libelants.

*W. W. Howe*, for claimant.

PARDEE, J. The decisive question in these cases is whether libelants had such a contract of passage as authorized them to travel upon the steamer Alvin, and be landed at the Fort Leon landing, in the parish of Plaquemines. The claimant, the New Orleans & Gulf Railroad Company, is the owner of a line of railroad running from the city of New Orleans down the coast of the Mississippi river, on the left bank of the same, and is also the owner of a line of steamers plying on the lower Mississippi, in connection and conjunction with this railroad. The Alvin is one of the steamers of the river line. The railroad company, for the purpose of attracting business and accommodating its patrons, issued what is called "a train and steam-boat ticket" from and to various points on the river reached by the respective lines. Printed on the ticket is the following:

"This ticket is good between stations or landings as indicated by punchmarks either on the railroad or steam-boats. If used on the railroad by passengers coming from or going to points on the west bank, it is good to the station opposite such point, and the nearest one at which the company advertise to stop its trains; but in no case does it include ferriage across the river."

The reverse of the ticket contains a list of the stations on the railroad and landings on the river arranged in order, commencing at New Orleans; the stations and landings on the left bank of the river being in one column, and immediately opposite the corresponding landings as to distances from New Orleans on the right bank of the river, *e. g.*:

| "* * * | * * * | |
|--------|-------|----|
| Orange Grove | Up. Magnolia | 20 |
| English Turn | Fort Leon | 21 |
| * * * | * * *" | |

The evidence shows that when the ticket is sold on the railroad the stations punched are the stations at which the ticket is sold and the station at the place of destination, and when sold on the steam-boats the landings punched are the landing where it is sold and the landing at the place of destination, and that these tickets are used in returning either upon the steam-boat line or upon the railroad line, as the holder may elect. If the holder elects to return by railroad, he is carried to the station actually punched, if his ticket is one sold and punched on the railroad, or to the railroad station opposite the one punched, if his ticket is one sold and punched on the steam-boat line. On the other hand, if the holder elects to return by steam-boat, he is carried to the landing actually punched, if his ticket is one sold and punched on the steam-

boat line, or to the nearest landing on either bank of the river, :t hold-er's option, if his ticket is one sold and punched on the railroad line. Among other stations and railroad landings named upon the reverse side of the ticket are the station and landing of English Turn on the left bank of the river, and immediately opposite, in the same line, and with the same number, is Fort Leon, a landing on the right bank of the river. The libelants each held one of these tickets, purchased on the railroad, and punched at 'English Turn, a station on the left bank of the river, as the place of starting and returning; Fort Leon being, as we have seen, the landing directly opposite in the column on the ticket, and a landing opposite English Turn on the right bank of the river. The evidence further shows that the general understanding of the traveling public and the custom of the carrier has been to land passengers under the said tickets at the place on either bank of the river as they may elect, oppo-site the station or landing punched, if the return trip is made by the steam-boat.    There is some evidence in the record tending to show that at the time these tickets were purchased the agent of the claimant who made the sale so stated to the libelants.    Whether this be true or not, I think it is immaterial, because it seems from the whole purport of the evidence with regard to the issuance of these round-trip tickets that such was the general rule and custom of the carrier.    In my opinion, under the circumstances as above narrated, there was a contract with the carrier to return the libelants, if they elected to travel by the steam-boat line, to the Fort Leon landing on the west bank of the river.    Conced-ing the contract, there is no question in these cases but what the same was violated by the carrier; nor is there any question that in the viola-tion the claimant's agents were actuated solely by their failure to control the principal libelant in the shipment of his plantation freight by their line.    The evidence in the case shows clearly that he had refused to give the steam-boat line his entire freight, and, as a retaliation for his re-fusal, that the steam-boat line had put him to various inconveniences in the shipment of his freight, principally in requiring the same to be prepaid, and afterwards had notified him that they would no longer stop at his landing, but would abandon it.    Perhaps they had a right, for the reasons given, to abandon the Fort Leon landing.    It may be true, and probably is, that a steam-boat is not required to stop at every place along the river where requested, nor is it required to maintain a landing whether it pays or does not pay expenses.    There is proof to show that they had notified the plaintiff that they had abandoned his landing, and would no longer land their steam-boat there.    But all this goes for noth-ing if, under the contract made in this case, the carrier had contracted to deliver him at that landing.    If the claimant had desired to entirely abandon the Fort Leon landing, it should have seen to it that as a land-ing it should be stricken from its list as printed on the tickets, and that its agents should not sell tickets calling, under the general arrangement referred to above, for such landing.

On the question of damages, it is considered that in the amounts al-lowed in the district court—$60 in each case—they are practically nom-

inal, leaving nothing to the libelants beyond the vindication of the law after the expenses of the litigation other than taxable costs are paid. This is substantially right, for the evidence shows that the main damages actually suffered were voluntarily incurred by libelants, and did not necessarily follow from the breach of contract; in short, that libelants rather insisted on enhancing damages.

Let decrees go for the libelants in the same terms and for the same amounts as in the decrees given by the district court.